NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
MUSHTEBA KURTISHI,                     :
                                       :   Civil Action No.: 07-5169(FLW)
                Petitioner,            :
                                       :        **Opinion**
        v.                             :
                                       :
UNITED STATES DEPARTMENT OF            :
JUSTICE, <u>et</u> <u>al.</u>,         :
                                       :
                Respondents.           :
_____ :

**WOLFSON**, **United States District Judge:**

     Petitioner, Mushteba Kurtishi, asks the Court to grant a writ of habeas corpus directing Respondents, the United States Department of Justice, the United States Department of Homeland Security Immigration, and Customs Enforcement ("DHS-ICE") and various officials responsible for Petioner's detention and deportation, to show cause why the Petitioner should not be released from custody and to stay his enforced departure from the United States. For the reasons set forth below, the petition is denied and this Court's prior TRO directing that Petitioner be returned to the United States and held in custody until further order of this Court is vacated as improvidently granted.

**I. Background and Procedural History**

     Petitioner, a native and citizen of Macedonia, was ordered excluded by the Immigration Court in New York City on December 15, 1997. The Immigration Judge found that he had not sufficiently established that he would be subject to persecution upon his return to Macedonia.

1

Amended Petition for Habeas Corpus, ¶9. Since the ruling of the Immigration Judge, Petitioner's case has been subject to repeated review. His appeal to the Board of Immigration Appeals ("BIA") was dismissed for failure to file a supporting brief on December 9, 2002. Id. at ¶10. Petitioner filed his first motion to reopen with the BIA on March 7, 2003, requesting a grant of asylum, or alternatively, a cancellation of his removal. The motion to reopen was denied on August 26, 2003. Id. at ¶¶11-12. Petitioner filed a second motion to reopen on November 21, 2003, which was denied by the BIA on July 20, 2004. After considering detailed affidavits from Petitioner and his wife stating why they feared returning to Macdeonia, along with documentation of alleged changed country conditions, the BIA denied Petitioner's second motion to reopen. Id. at ¶¶13-14. Further, Petitioner filed a petition for review with the United States Court of Appeals for the Second Circuit on August 19, 2004, which was denied on February 15, 2006. Id. at ¶15. The Second Circuit also vacated any stay of removal of Petitioner, See Declaration of James Shaughnessy ("Shaughnessy Declaration"), Exhibit 18. Petitioner filed a third motion to reopen his asylum proceedings with the BIA on October 17, 2007, which was withdrawn on November 8, 2007. Shaughnessy Declaration, Exhibit 20.

    Petitioner was taken into custody by the DHS-ICE on October 10, 2007; he was "targeted based on [the] removal order from December 15, 1997." Record of Deportable/Inadmissible Alien, Shaughnessy Declaration, Exhibit 19. He was held at Middlesex County Jail in New Jersey. Amended Petition for Habeas Corpus, Parties, ¶1. Accordingly, on October 25, 2007, Petitioner filed for a writ of habeas corpus with this Court. Id. at ¶¶20-21. Though denominated as a "Petition For Writ of Habeas Corpus By a Person In State Custody," the document was actually an effort to challenge his removal, labeled "PETITION TO HALT REMOVAL

PROCEEDING." The document says little of substance, and is simply a "check-off" form petition. See Docket Entry No. 1.

On November 14, 2007, only a few hours before his scheduled deportation, and through new counsel, Petitioner filed an emergency TRO with this Court. The Court immediately held a teleconference with Petitioner's counsel and an Assistant United States Attorney.[1] Counsel for Petitioner represented that previous counsel had filed a petition for a writ of habeas corpus with the Court and requested the opportunity to amend it to address the Government's contentions regarding the jurisdiction of this Court, as well as other matters. Given newly-retained counsel's representations that there was insufficient time to investigate the facts and procedural history of Petitioner's immigration proceedings, the fact that his removal by Final Order of Deportation would be irreversible, and out of an abundance of caution, the Court sought to maintain the status quo and enjoined Respondents from deporting Petitioner until further order of this Court. I did not, however, make any findings regarding the Petitioner's right to relief; there was a paucity of information provided to me, and the time constraints imposed upon the Court and the Government by the Petitioner's eleventh hour application created the exigent circumstances that did not permit substantive review on that date.  Also, at the time, the Court granted Petitioner's request to amend his petition for a writ of habeas corpus, and ordered Petitioner to file a supporting brief on November 21, 2007, with the Government's reply due on November 27, 2007. The Court received the Petitioner's Amended Petition and the Government's opposition, contending that his detention until deportation was legal.

---

[1]The Assistant United States Attorney had not been served with Petitioner's request for a TRO and had to retrieve it from the docket via PACER after she was contacted by the Court.

Petitioner was deported during the teleconference, and before the Order was entered. As such, the Court modified the Order to the effect that Petitioner should be returned to the United States and held in custody until further order of this Court. The Court also had a teleconference with the parties immediately after the Court learned that the plane had departed. Given the Assistant United States Attorney's representation that it would take at least two weeks to return Petitioner to the United States, the Court indicated that it intended to rule on the petition for habeas corpus immediately upon receipt of the parties' papers, and before Petitioner would be returned to the United States.

**II. Discussion**

A review of the relationship between the Real ID Act and this Court's jurisdiction pursuant to 28 U.S.C. 2241 is necessary to address the Court's jurisdiction to entertain Petitioner's claims. In Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir. 2005), the Third Circuit stated:

> During the pendency of our deliberations on this matter, Congress amended section 1252 of Title 8 of the United States Code via the Real ID Act of 2005, Pub.L. 109-13, 119 Stat. 231 ("Real ID Act"). Under the new judicial review regime imposed by the Real ID Act, a petition for review is now the sole and exclusive means of judicial review for all orders of removal except those issued pursuant to 8 U.S.C. § 1225(b)(1). See 8 U.S.C. § 1252(a)(5) (1999 & Supp.2005). . . Moreover, all habeas corpus petitions brought by aliens that were pending in the district courts on the date the Real ID Act became effective (May 11, 2005) are to be converted to petitions for review and transferred to the appropriate courts of appeals. See Real ID Act, Pub.L. 109-13, Div. B, Title I, § 106(c). These modifications effectively limit all aliens to one bite of the apple with regard to challenging an order of removal, in an effort to streamline what the Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review). See H.R. Conf. Rep. No. 109-72, at 173-75 (2005).

Bonhometre makes clear that (i) this Court lacks jurisdiction to review the order of

removal entered against Petitioner and (ii) that Petitioner's "one bite of the apple" in the federal courts already took place at the Second Circuit. Indeed, Petitioner concedes as much by arguing that he seeks to challenge his order of removal "independently of this action," and that for purposes of this action, he is merely "challenging his continued restraint by the DHS-ICE." Amended Petition for Habeas Corpus, Jurisdiction and Venue, ¶ ¶2-3.

In Bonhometre, the Third Circuit explained the role of habeas corpus petitions on behalf of aliens after the Real ID Act: "[The provision stripping district courts of jurisdiction] applies only to aliens who are challenging an order of removal via habeas corpus. An alien challenging the legality of his *detention* still may petition for habeas corpus. See H.R. Conf. Rep. No. 109-72, at 175 (2005)." Id. at 445 n.4 (emphasis in original). Thus, Petitioner may challenge "the legality of his detention" through a petition for habeas corpus.[2] Though his original petition could be dismissed on its face as a "PETITION TO HALT REMOVAL," over which this Court lacks jurisdiction, this Court has jurisdiction to consider Petitioner's Amended Petition- a challenge to

---

[2] Although Petitioner was released in Macedonia subsequent to the entry of the TRO, this Court has jurisdiction because "we measure custody at the time [Kurtishi] filed the petition," Chong v. District Director, I.N.S., 264 F.3d 378, 382 (3d Cir. 2001), and at that time he was plainly in the custody of the DHS-ICE. Further, Petitioner's claim is not moot because this Court's prior Order directs that he be returned to the United States pending the resolution of his Amended Petition. Petitioner has a personal interest in his return, and though the enforcement of his order of removal may be an injury that this Court has no authority to redress, surely the Court has the inherent authority to reconsider its prior Order. Furthermore, the authority of the Court to reconsider and review its Order of November 14, 2007 is even more compelling under the facts of this case. As the parties are well aware, and as set forth in this opinion, at the time Petitioner's emergent application was made to the Court effectively no showing was made by Petitioner regarding his right to relief under the petition, aside from the irreversible harm of his exclusion. Thus, it was contemplated by the Court and conveyed to the parties that the Court would review the Order of November 14, 2007 in conjunction with its consideration of the Amended Petition upon receipt of submissions by the parties, which has now occurred. With the benefit of these submissions, the Court is now in a position to see that Petitioner's emergent application had no merit for the reasons discussed herein.

the legality of his detention- pursuant to 28 U.S.C. 2241.[3]

The Court, however, must deny Petitioner's Amended Petition because he has provided absolutely no reason why his detention by the DHS-ICE from October 10, 2007 until November 14, 2007, the day he was to be deported, was unlawful. In fact, his petition merely indicates that his remedies have been exhausted. See Amended Petition for Writ of Habeas Corpus. Indeed, upon review of the Amended Petition, I find that Petitioner has no basis to argue that his detention pursuant to an order of removal was unlawful.

Instead, Petitioner's only argument is that his enforced departure was unlawful because the DHS-ICE continued with his deportation even after this Court granted a TRO enjoining his departure, and that even after the departure of his flight, Petitioner's removal should have been stopped. As the Government points out, DHS had no knowledge that the TRO was granted until after the plane had left the gate. The Court agrees with the Government that it was Petitioner's delay in seeking the TRO that caused this situation, not actions taken by the Government. In any event, this line of argument is to no avail for two reasons. First, since the Court is vacating the initial TRO as improvidently granted, that Order cannot be a basis for further argument by the Peitioner that he has been unlawfully detained. Second, the TRO was entered merely to maintain the status quo in response to an emergent situation. After the Court was informed that the plane had already departed, the Court held a teleconference between the parties and indicated that it would consider Petitioner's claims *before* the Order to return Petitioner to the United States was

---

[3]Section 2241 provides in relevant part:
"(a) Writs of habeas corpus may be granted by. . . the district courts. . .
(c)The writ of habeas corpus shall not extend to a prisoner unless-. . .(3) He is in custody in violation of the Constitution or laws or treaties of the United States. . ."

effectuated. Thus, the Order cannot serve as a basis for Petitioner to complain about the fact that he was transported to Albania subsequent to the entry of the Order.

The Court notes that there is case law for the proposition that an alien may challenge his post-removal-order detention under 8 U.S.C. § 1231(a), based on a temporal-reasonableness standard: "Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a resident alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005)." Qing Di Wang v. Aschroft, No. 04-4048, 2006 WL 1540896, *2 (D.N.J. May 31, 2006). Since Kurtishi had been in custody of DHS-ICE for only roughly five weeks, and was to be deported at the time the TRO was entered, his detention was presumptively reasonable. Further, relief for detention beyond the six month period is available only where there is no significant likelihood of removal in the reasonably foreseeable future. Kurtishi's deportation negates any possibility of such a showing.

**III. Conclusion**

Because the facts alleged by Petitioner in his Amended Petition demonstrate that he has not been detained for an unconstitutional or unreasonable period of time, and because Petitioner cannot demonstrate that his removal is not likely in the foreseeable future, Petitioner's Amended Petition for a writ of habeas corpus and stay of his enforced departure is denied, and this Court's prior Order directing his return from Macedonia is vacated. An appropriate Order will follow.

Dated: November 29, 2007                                    /s/ Freda L. Wolfson
                                                                                       Honorable Freda L. Wolfson
                                                                                       United States District Judge